AO 91 (Rev. 11/11) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| United States of America<br>v.<br>Geovani HERNANDEZ<br>DOB: 1974<br>United States Citizen<br><br>*Defendant(s)* | )<br>)<br>) Case No. M-17-1419-M<br>)<br>)<br>)<br>) |

UN-SEALED

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __July 15, 2017__ in the county of __Hidalgo__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C., Section 846 | Attempt to possess with intent to distribute a controlled substance |
| Title 21 U.S.C., Section 841(a)(1) | Possesion with intent to distribute more than 5 kilograms of cocaine, a Schedule II controlled substance |
| Title 18, U.S.C., Section 2 | Aiding and Abetting |

This criminal complaint is based on these facts:

See Attachment

☑ Continued on the attached sheet.

_____
Complainant's signature

Antonio Perez, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: August 11, 2017 8:38 am

_____
Judge's signature

City and state: McAllen, Texas

Peter E. Ormsby, U.S. Magistrate Judge
*Printed name and title*

## ATTACHMENT

1. In August 2016, U.S. Immigration and Customs Enforcement ("ICE"), Homeland Security Investigations ("HSI") in McAllen, Texas received information from a confidential informant ("CI #1") regarding a drug trafficking organization ("DTO") involved in the distribution of controlled substances. CI #1 identified Progreso, Texas Police Sgt. Geovani HERNANDEZ as a member of the DTO.

2. On May 30, 2017, CI #2 met HERNANDEZ to discuss the illegal business venture. During the meeting, HERNANDEZ told CI #2 that he was a close friend of Juan Manuel Loza-Salinas aka "El Toro" (Loza-Salinas was a Gulf Cartel Plaza boss in Reynosa, Tamaulipas, Mexico) and that he needed money for his campaign for Hidalgo County Constable.

3. CI #2 told HERNANDEZ that his organization was sending vehicles north (reference to transporting controlled substances) and that they needed to run record checks on vehicles. HERNANDEZ told CI #2 to give him the identifiers of the vehicles and that he would get them the information. HERNANDEZ told CI #2 that he charged $1,000 or more to obtain this type of information. HERNANDEZ also told CI #2 that cartel leaders know him and that he travels to Reynosa, Tamaulipas, Mexico without any problems.

4. On June 2, 2017, CI #2 met with HERNANDEZ to give him a vehicle license plate to run a records check. During the meeting, CI #2 paid HERNANDEZ approximately $1,000 for his assistance with the records check.

5. On June 4, 2017, CI #2 met with HERNANDEZ. During the meeting, HERNANDEZ gave CI #2 a document that contained printed detailed information regarding the vehicle license plate.

6. On June 26, 2017, HSI Special Agents gave CI #2 a note with a name and date of birth and approximately $2,000.00. Later that same day, CI #2 met with HERNANDEZ and asked HERNANDEZ to run a record check on the name and to check to see if he was an informant. At that time, CI #2 paid HERNANDEZ to run the checks.

7. On July 11, 2017, CI #2 met with HERNANDEZ. During the meeting, CI #2 told HERNANDEZ that he/she needed to drive a vehicle for the DTO from Progreso, Texas to Pharr, Texas. CI #2 told HERNANDEZ that he/she would drive to a warehouse in Progreso, Texas to load the vehicle with "items" belonging to the DTO and then drive to Pharr, Texas. CI #2 told HERNANDEZ he/she was going to receive $10,000 from the DTO if the vehicle arrived safely at its destination and that he/she (CI#2) was willing to split the money with HERNANDEZ if HERNANDEZ assisted in the operation. HERNANDEZ then told CI #2 not to tell him what the vehicle would be transporting, not to discuss any details on their current cell phones and to buy new cell phones.

8. On July 15, 2017, based on phone calls, meetings and payments to HERNANDEZ, HSI special agents in anticipation of the operation loaded 10 bricks of a white powdery substance weighing approximately 10 kilograms into an undercover

3

vehicle. Only 1 brick weighing approximately 1.1 kilograms contained cocaine hydrochloride. Subsequently, a Cooperating Defendant ("CD") took possession of the undercover vehicle.

9. Later that day, CI #2 met with HERNANDEZ. During the meeting, CI #2 told HERNANDEZ that the DTO needed his assistance to ensure that a vehicle would successfully travel through Progreso, Texas. HERNANDEZ agreed to assist and instructed CI #2 to get into HERNANDEZ's privately owned vehicle.

10. While in possession of the undercover vehicle, the CD called CI #2. CI #2 put the cell phone on "speaker" mode to allow HERNANDEZ to hear the conversation. During the call, the CD told CI #2 that she was on her way to FM 1015 in Weslaco, Texas. In a later call, the CD told CI #2 (phone on "speaker" mode) that the delay was due to having trouble "loading the 10 eggs in the basket". HERNANDEZ then told CI #2 to let the CD know that they would be patrolling the streets.

11. Later in the day, CI #2 met with HERNANDEZ and paid him approximately $5,000 for his services.